*1118 OPINION.
Milliken :
The first issue relates to the deduction allowed by reason of section 214 (a) (10) of the Revenue Act of 1918, which provides as follows: *
Sec. 214. (a) That in computing net income there shall he allowed as deductions :
(10) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: Provided, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer’s interest therein) on that date shall be taken in lieu of cost up to that date: Provided further, That in the ease of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the ease of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.
Petitioners introduced as evidence of the value of their interest in the oil and gas lease, sales of undivided interests in their holdings both before and after the first discovery was made. The sales prior to the date of the discovery were at the rate of about $700 per acre for the entire royalty interest and the sales after the date of discovery were at approximately $2,000 per acre. The sales prior to the date of discovery obviously have little bearing upon the value upon the date of discovery since it was not known prior to that date whether or not any oil existed in the property and therefore the values were for the most part speculative. The sales both prior and subsequent to the date of discovery were of undivided interests in the entire 345 acres. The record does not disclose the extent of the *1119 area which respondent considered proven by the five discoveries made during the year 1919, nor by the sixth discovery made during the year 1920. The fact that a valuation based upon discovery was allowed in the year 1920 demonstrates that the entire area was not considered proven during the year 1919. Petitioner has introduced no evidence showing the estimated oil reserves on the entire 345 acres, but has proceeded on the assumption that the reserves of 117,000 barrels determined by the Commissioner as applicable to the entire royalty interest, applied to the entire 345 acres. There is nothing in the record to show that this assumption was correct. It is not reasonable to assume that a prospective purchaser would have paid $690,000 for the one-eighth royalty interest, as contended for by petitioner, if it were known that only some 117,000 barrels of oil could be recovered from the property and paid over to such interest, since the price of oil was $2.25 per barrel at the time of the first four discoveries in 1919, $2.50 per barrel at the time of the fifth discovery, and $2.75 per barrel at the time of the sixth discovery.
Since there is no information in the record showing the total expected amount of oil to be recovered from the 345 acres, we are unable to determine what the reasonable depletion rate per barrel would be, even assuming that the fair market value was $690,000 for the one-eighth royalty interest. Accordingly we hold that the petitioners have failed to show that the rate of depletion per barrel determined by the respondent was erroneous.
The second issue presents a question arising out of an exchange be - tween Elisha Roper and J. M. Allen. The amount of profit is not disputed. The respondent determined that the exchange was effected in the year 1919, and has included the profit in income for that year The petitioners appeal from this determination, averring that the exchange was made in 1920.
It is clear from the agreement between Allen and Roper that they desired to effect the exchange within the calendar year 1919, and the deed to the nominees of Allen'which Elisha Roper executed on November 29, 1919, and which was filed on December 1, 1919, and recorded on December 10, 1919, might lend probability to the occurrence of the exchange in December, 1919. Allen had difficulty in acquiring a clear title from G. N. Lazenby to 1640 acres of land included in the exchange with Roper and it was necessary for Allen to request and Roper to grant an extension of time of no stated duration beyond the dates specified in their agreement for the delivery of deeds and the perfecting of titles. The record is silent as to the exact date when delivery was made to Roper of the deeds to the lands he was to receive in exchange. In support of Elisha Roper’s testimony that he received these deeds u some time in January, 1920,” *1120 petitioners rely- upon what transpired in the acquisition of 920 acres of land by Allen from E. B. Anderson, being the same 920 acres which Boper was to receive under the agreement between Allen and Boper. We are satisfied that Anderson executed a deed on or about November 1, 1919, to Allen for the land and deposited it in escrow in a bank at Eastland, Tex., there to be held until payment of the consideration was made and that thereafter a delay ensued so that the deed was still on deposit undelivered on December 31,
1919. It is also in evidence that Anderson received payment from the bank f,or his tract of land on January 15, 1920. Obviously, Allen could not convey title to Boper in the Anderson land until he acquired title from Anderson in January, 1920. In our opinion, the record supports the contention of the petitioners that the delivery to Boper of the deeds from Allen occurred in 1920.
After a careful consideration of the entire record, we are convinced that the exchange took place in the year 1920, and the income resulting from the exchange was received in the calendar year 1920.
Belative to the third issue, the respondent agreed to a stipulation that state, county and city taxes aggregating $1,379.07 were paid in 1921 and were properly allowable as a deduction from income in that year. Fifteen exhibits were filed by petitioners evidencing the payment of other taxes in 1921, aggregating $4,088.70, and the petitioners contended that the entire amount was deductible. Bespond-ent objected to many of the items, pointing out the possibility of confusion with the taxes of “ E. Boper,” a brother of petitioner. We are relieved of all doubt on this score by the uncontroverted testimony of the petitioner that he paid the taxes and they were on his property and not that of his brother. Many of the items are state, county and school taxes in the same general classification as those agreed to by the respondent, and equally allowable. Claim is made for the deduction of taxes paid to the Cameron County Water Improvement District Number Two, aggregating $798.79, described as follows:
“ The above amount being for maintenance charges and bond tax.” While satisfied of the probablity that a part of this amount is allowable as a deduction, if not all of it, we are unable to determine from the record the amount properly allowable and the entire amount claimed is therefore disallowed. We find allowable a deduction aggregating $4,668.98 for taxes paid in 1921, inclusive of the amount of $1,379.07 agreed to by the parties.
Judgment will be entered upon 15 days' notice, under Bule 50.
Considered by MaRquette, Phillips, and Vai-t FossaN.